UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LINDA DEVORE

      Plaintiff,

v.                                Case No. 3:22cv23951-MCR-HTC

NORTHWEST FLORIDA
STATE COLLEGE,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Linda DeVore, proceeding *pro se*, alleges Defendant Northwest Florida State College refused to hire her as its general counsel due to her age, in violation of the Age Discrimination in Employment Act ("ADEA") and the Florida Civil Rights Act. Plaintiff has moved for partial summary judgment, Doc. 31, and Defendant has moved for summary judgment, Docs. 32, 33, & 34, and both motions are fully briefed, Docs. 39, 40, 43, & 44. After reviewing the parties' submissions, the record, and the relevant law, the undersigned recommends Defendant's motion be GRANTED, because regardless of whether Plaintiff has established a prima facie case of discrimination, Defendant has produced unrebutted, legitimate, nondiscriminatory reasons for its hiring decision. Because the undersigned finds Defendant's motion, which resolves the entire action, should be granted, the

undersigned recommends Plaintiff's motion, which focuses only on the prima facie case, be terminated as MOOT.[1]

## I.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The Court must review the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993) (citation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).

---

[1] However, the undersigned has considered all arguments and evidence associated with Plaintiff's motion.

## II.    Statement of Undisputed Facts

1.    On October 8, 2020, Defendant posted a job opening for its general counsel position which required candidates to submit their application by November 2, 2020.  Doc. 32-2 at 2.

2.    Plaintiff applied to be Defendant's general counsel on October 28, 2020, through the website Indeed.  Docs. 31-3 at 9; 32-2 at 3.  At the time, she was 69 years old.  Doc. 32-1 at 13.  Her application materials did not include a traditional resume.  Docs. 32-1 at 95; 32-2 at 3.  Plaintiff also left the "Employment" section of the application blank, despite it advising her to "list below all present and past employment, beginning with your most recent."  Doc. 32-1 at 73-74, 262-63.

3.    On November 9, 2020, Defendant's President, Dr. G. Devin Stephenson, formed a 5-member screening committee to review applications and rank the candidates.  Doc. 32-2 at 3-4.  The committee included Stephenson and four other administrators—Dr. Cristie Kedroski, Dr. Deidre Price, Randall White, and Nathanial Slaton.  Doc. 32-2 at 3-4.  Although the committee was responsible for ranking the candidates, Stephenson had sole responsibility for deciding which candidate to hire.  Doc. 32-2 at 5.

4.    On November 9, 2020, an HR Specialist with Defendant, Jessica Holley, invited Plaintiff and the 11 other candidates to submit a 10-minute video

presentation by November 16, 2020, introducing themselves and answering three job-related questions.  Doc. 32-2 at 4, 63-64.

5.     The screening committee met on November 17, 2020, reviewed the candidates' applications and video presentations, and ranked the candidates.  Doc. 32-2 at 4.  When the individual committee members' rankings were combined into a composite ranking, Plaintiff was ranked last among the 9 remaining candidates.[2] Doc. 32-2 at 4-5.

6.     Stephenson's declaration asserts Plaintiff's last-place ranking was based on: (1) Plaintiff's unimpressive application materials; (2) Plaintiff's failure to disclose any work history or otherwise identify any prior employers; (3) Plaintiff's submission of a PowerPoint slideshow instead of a resume, which failed to list any prior employers; (4) Plaintiff's video presentation, which was seen as unprofessional and weaker than other candidates' presentations.[3]  Doc. 32-2 at 6-7.

7.     On November 17, 2020, Defendant invited the three top-ranked candidates—Whitney Rutherford, J. David Kutch, and Robert Large—to participate

---

[2] Three of the twelve original candidates had withdrawn from consideration.  Doc. 32-2 at 4-5.

[3] Stephenson's declaration indicates neither he nor the rest of the committee members knew Plaintiff's age.  However, Plaintiff argues otherwise, asserting Defendant knew her age because her date of birth appeared on her law school transcript and Defendant surmised her age based on her graduation dates and appearance in the video presentation.  As will be explained below, this dispute is not material because even if Defendant knew Plaintiff's age, it has still offered legitimate, nondiscriminatory reasons for its decision not to hire Plaintiff which she has failed to rebut.

in live, virtual interviews.  Doc. 32-2 at 5.  At this point, Plaintiff was no longer being considered for the position.  Doc. 32-2 at 5.

8.      On November 20, 2020, Plaintiff called and told Holley she had passed the Florida Bar Exam; Holley did not share this information with others because it was considered unfair to the other candidates to accept information outside the original application materials.  Docs. 31-4 at 79-81; 32-1 at 115-16.

9.      After virtual interviews were held with the three top-ranked candidates on November 19, 2020, Defendant invited Rutherford and Kutch to in-person interviews on its campus.  Doc. 32-2 at 5.  Rutherford's in-person interview took place on November 29 and 30, and Kutch's took place on November 30 and December 1.  Doc. 32-2 at 5.

10.     On December 1, 2020, Stephenson decided to hire Rutherford for the general counsel position.  Doc. 32-2 at 5.  Stephenson offered Rutherford the job on December 2; she accepted the job on December 3, executed an employment agreement on December 4, and began working on January 19, 2021.  Doc. 32-2 at 5.

11.     Rutherford, who was 27 years old, ranked second in the screening committee's composite ranking.[4]  Doc. 32-2 at 6.  Stephenson's declaration asserts

---

[4] The sheet with the committee's composite ranking shows Rutherford as the first-ranked candidate.  Doc. 32-2 at 71.  However, a review of the individual committee member's rankings, Doc. 32-2 at 66-70, shows Rutherford was actually ranked second (all five members ranked Kutch first, four members ranked Rutherford second, and one ranked her third).

this ranking was based on: (1) Rutherford's "outstanding" video presentation; (2) her employment history, which included a federal court clerkship and relevant material experience in private practice at a law firm; (3) her finishing at the top of her law school class and earning A's throughout her law school and undergraduate studies; and (4) her being a member of the Florida Bar in good standing.  Doc. 32-2 at 6.

12.     Holley telephoned Plaintiff on December 7, 2020, and informed her she was not chosen for the job.  Doc. 32-1 at 118.

## III.   Discussion

### A.     ADEA Legal Standard[5]

"A plaintiff may prove an ADEA claim through direct or circumstantial evidence."  *Adams v. Holland*, 824 F. App'x 982, 984 (11th Cir. 2020) (citing *Mazzeo*, 746 F.3d at 1270).  Where, as here, a claim is based on circumstantial evidence, the Court generally applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Mazzeo*, 746 F.3d at 1270.  Under this framework, a plaintiff must first establish a prima facie case of discrimination, which generally requires a plaintiff to show: (1) she was a member

---

[5] Age-discrimination claims made under the Florida Civil Rights Act are evaluated using the same legal framework as the ADEA.  *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1266 (11th Cir. 2014).  As a result, the resolution of Plaintiff's ADEA claim also resolves her FCRA claim.

of the protected group of persons between the ages of 40 and 70; (2) she was subject to an adverse employment action; (3) a substantially younger person filled the position she sought; and (4) she was qualified to do the job for which she was rejected. *Adams*, 824 F. App'x at 984 (citations omitted). If a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Mazzeo*, 746 F.3d at 1270. If the employer articulates at least one such reason, the plaintiff is then required to show the employer's stated reason is merely a pretext for discrimination. *Id.*

### B.    Prima Facie Case

The parties do not dispute that Plaintiff was between the ages of 40 and 70 when she applied for the general counsel position, that she was subject to an adverse employment action in that she was not hired for the position, and that a substantially younger person filled the position she sought. Thus, whether Plaintiff can establish a prima facie case turns on whether Plaintiff was qualified for the general counsel position.

An individual is "qualified" for a position if she meets the criteria the employer has specified for the position. *Wright v. Southland Corp.*, 187 F.3d 1287, 1300 n.16 (11th Cir. 1999). Relevant here, Defendant's job posting indicated applicants were required to have: (1) admission to practice law in Florida; and (2)

three to five years' experience practicing law with a record of legal accomplishments.  Doc. 32-1 at 255.

Defendant argues Plaintiff was not qualified for the position and cannot establish a prima facie case of discrimination because Plaintiff was not licensed to practice law in Florida by the November 2, 2020 application deadline or by December 1, 2020, the date Stephenson made the hiring decision.[6]  In contrast, Plaintiff claims she reasonably believed she only needed to be licensed by the time employment began.  Plaintiff also argues Defendant did not inflexibly adhere to the listed qualifications because Rutherford was only admitted to practice law on November 27, 2017, and, thus, she did not meet the requirement that the applicant have three years' experience practicing law as of the November 2, 2020 application deadline.  Plaintiff also notes Defendant admitted its decision not to hire Plaintiff "was based upon factors other than minimum qualification requirements," Doc. 31-3 at 23, and "[t]here was no specific conclusion made during the recruitment process by the collective decision makers of which candidates were 'minimally qualified,'" Doc. 31-3 at 10.

Based on the foregoing, the undersigned concludes Plaintiff has demonstrated she was qualified for the general counsel position.  The evidence suggests Defendant

---

[6] Although Plaintiff indicated she was admitted to practice law in Florida on her October 28, 2020 application, Docs. 32-1 at 77; 32-2 at 59, she was not admitted until December 2, 2020, Doc. 32-1 at 117.  However, she was licensed to practice law in California.

did not treat the qualifications listed on the job posting as mandatory, as it did not determine which of the 12 candidates were minimally qualified and did not eliminate either Plaintiff or Rutherford from consideration based on their failure to meet the listed qualifications by November 2, 2020.[7] *Cf. Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 643 (11th Cir. 1998) ("It is clear from the testimony of Cook and McLemore, that of the three 'position requirements' of education, experience, and special knowledge and skills, only education was treated as a minimum requirement.  Both Cook and McLemore testified in their depositions that they considered education to be the minimum requirement that assisted them in initially selecting a pool of candidates to consider for the position.").  Thus, Plaintiff has established a prima facie case of age discrimination.  However, the undersigned disagrees with Plaintiff that triable issues of fact exist as to other parts of her age discrimination claim.

### C.    Legitimate, Nondiscriminatory Reason

Because Plaintiff has established a prima facie case of discrimination, the burden of production shifts to Defendant to articulate a legitimate,

---

[7] In its response to Plaintiff's motion, Defendant also argues Plaintiff was not qualified for the position because she failed to submit a traditional resume and failed to disclose any of her prior employers in the employment section of her application.  Doc. 39 at 9-11.  However, submission of an applicant's employment history was not identified as a qualification or prerequisite for consideration in the job posting.  Indeed, it appears Defendant omitted this argument in its motion for summary judgment, arguing there only that Plaintiff was not qualified because she was not licensed in Florida until December 2020.  Doc. 34.

nondiscriminatory reason for its decision to hire Rutherford over Plaintiff.  *See Mazzeo*, 746 F.3d at 1270.  Defendant has met that burden by proffering the following reasons for hiring Rutherford rather than Plaintiff—Rutherford was ranked higher, had an outstanding video presentation, provided a more thorough application which revealed her academic achievements and employment history, and was a better overall candidate.  Docs. 32-2 at 6-7; 34 at 18; *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (noting a reason is legitimate if it might motivate a reasonable employer).

### D.    Pretext

Because Defendant has met its burden of articulating legitimate, nondiscriminatory reasons for its hiring decision, the burden shifts back to Plaintiff to demonstrate the proffered reasons are merely a pretext for discrimination.  *See Mazzeo*, 746 F.3d at 1270.  "A reason is pretextual only if it is false and the true reason for the decision is discrimination."  *Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 303 (11th Cir. 2020) (citing *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007)).  Here, Plaintiff has not met the reasons offered by Defendant head on and rebutted them. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by

simply quarreling with the wisdom of that reason.") (citation omitted).  Instead, as discussed below, Plaintiff's sole basis for believing she was discriminated against is that she was not hired.  The fact that a potential employer finds another candidate to be more qualified, however, simply cannot be the basis of a discrimination claim.

### i.     Qualifications and Experience

Plaintiff suggests her qualifications were superior to Rutherford's and, thus, the hiring decision must have been the product of age discrimination.  Doc. 32-1 at 128.  Rutherford's application showed: (1) she graduated *summa cum laude* from Liberty University with a B.S. in Western Legal Traditions and minors in Print Journalism and Crisis Communication; (2) she graduated first in her class at Liberty University School of Law in 2017 and served as Chairman of the Moot Court Board and Managing Editor of the Law Review; (3) she interned at a law firm in 2013, for a Virginia State Senator in 2013 and 2014, and for the Virginia Department of Motor Vehicles in 2015; (4) she worked as an associate to in-house counsel at a pharmaceutical company in 2016; (5) after graduating law school, she clerked for a judge on the U.S. Court of Federal Claims for approximately three years; and (6) following her clerkship, she worked as an associate attorney with Elizabeth Morgan & Associates.[8]  Doc. 32-2 at 72-84.

---

[8] Plaintiff erroneously asserts it is an undisputed fact Rutherford did not submit her law school transcript until after January 12, 2021, Doc. 31 at 9, because Defendant produced a copy of

Plaintiff's application[9] showed: (1) she graduated from California State University ("CSU"), Long Beach with a B.A. in Consumer Economics; (2) she graduated in 1985 from Loyola Law School, where she was selected as a member of the International and Comparative Law Journal, received a Dean's Service Award, and was a member of the Saint Thomas More Law Honor Society; (3) she earned an M.S. in Educational Administration from CSU, Fullerton, with a 4.0 GPA and a thesis titled "Free and Equal Access to Public Education in California"; (4) she served as an adjunct professor at multiple institutions, including teaching a class at CSU Fullerton in "School Law" and a class in the paralegal program at the UCLA extension; (5) she "practiced law in various settings for many years, with a few hiatus experiences" and her "[p]ractice of law exceeds five years"; (6) she had "done

_____

Rutherford's law school transcript which indicates it was issued on January 12, 2021, Doc. 31-3 at 37-38. However, a complete copy of Rutherford's application materials is attached to Stephenson's declaration and those materials include undergraduate and law school transcripts issued on July 30, 2019. Doc. 32-2 at 6, 78-79, 82-83. Furthermore, as Jessica Holley explained during her deposition, when Defendant offers an applicant a position, it requests that they submit official copies of their transcripts around the time of their start date. Doc. 31-4 at 35. Rutherford also testified it was her recollection that Defendant's human resources department required her to submit final transcripts before her first day. Doc. 40-4 at 76-77. Thus, the undisputed evidence shows Defendant had a copy of Rutherford's transcripts during the hiring process.

[9] Plaintiff claims her application materials were never considered by screening committee. This is refuted by Stephenson's declaration, which states the screening committee reviewed "all applications and video presentations" on November 17, 2020, and the committee "was not impressed by [Plaintiff's] application materials." Doc. 32-2 at 4, 7. Furthermore, Plaintiff attempts to support this claim (and other claims) by citing certain requests for admission which Defendant denied. *See e.g.*, Doc. 40 at 18-19. However, "the effect of a denial is not to admit the opposite of the proposition offered for admission, but rather is simply to establish that the matter is in dispute." *Griffith v. Wal-Mart Stores East, L.P.*, 884 F. Supp. 2d 1218, 1226 (N.D. Ala. 2012); *see also Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, 877 F. Supp. 2d 1161, 1170 (N.D. Ala. 2012) ("Unlike admissions, denials do not constitute 'materials in the record' that can be relied on in making or responding to a motion for summary judgment.").

several appeals, with four published opinions"; and (7) she "[p]ublished two chapters in a legal book series on Trusts and Wills, for Matthew Bender."  Doc. 32-2 at 23, 36, 42-45, 51-54, 57.

Although Plaintiff attempts to support her age discrimination claim by arguing she was more qualified than Rutherford, a comparison of their applications shows it was not unreasonable for Defendant to conclude Rutherford was the better candidate, particularly given the lack of specific information Plaintiff provided about her employment history (e.g., the names of the firms she worked for, what time period she held each position, a description of the work she performed in each position).[10] Indeed, it was unclear from Plaintiff's application whether she was currently employed or when and in what capacity she last held gainful employment.  *See Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174 (10th Cir. 2000) (concluding plaintiff was "unable to demonstrate [the employer's] proffered reasons for not

---

[10] Plaintiff testified she did not list any of her past employers on her application form because: (1) she could not list all her past employers in the space provided; (2) she did not want Defendant to speak to one of her former employers who was facing possible discipline from the California Bar; and (3) she sometimes held multiple positions at once (e.g., a job and an adjunct teaching position), which she thought would be difficult to convey on the form.  Doc. 32-1 at 73-75.  In addition, the parties dispute whether Plaintiff submitted a cover letter with her application.  Plaintiff maintains she did, while Defendant asserts it never received it.  This dispute is not material.  Plaintiff's cover letter: (1) asserts she "practiced law in a small office and taught law as an adjunct professor at the same time"; (2) indicates she worked "years as an attorney"; and (3) described four cases she worked on.  Doc. 32-1 at 299-300.  The cover letter, like the other application materials, does not provide a detailed chronological view of Plaintiff's employment history.  Thus, even if it was considered with the rest of Plaintiff's application, the evidence would not establish that no reasonable person could select Rutherford over Plaintiff.

hiring him, his poor interview and his incomplete job application, were in any manner pretexts for racial discrimination").

Because Plaintiff has not shown the academic achievements and work experience she disclosed to Defendant were so superior to Rutherford's that no reasonable person could have chosen Rutherford over her, she has failed to show Defendant's assessment of the two candidates was pretext for discrimination.[11] *See Moore v. Jefferson Cnty. Dep't of Human Res.*, 277 F. App'x 857, 859 (11th Cir. 2008) ("[W]hen challenging a successful applicant's qualifications, a plaintiff must show that the disparities between the candidates' qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'") (quoting *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006)); *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1277 (11th Cir. 2002) (to show pretext, a plaintiff "must show more than superior qualifications; rather, they must show that they were so much more qualified that the disparity virtually jumps off the page and slaps one in the face") (citation omitted).

---

[11] Plaintiff cherry picks bits of Rutherford's deposition testimony in an effort show Rutherford lacked certain experience or knowledge.  Doc. 43 at 8-11.  However, absent a showing the screening committee was aware of the information conveyed in the cited testimony, it is irrelevant to evaluating Defendant's hiring decision.

### ii.    Video Presentation

Defendant also based its hiring decision on Plaintiff's video presentation, which it characterized as "unprofessional." Doc. 32-2 at 7. In contrast, Defendant viewed Rutherford's video presentation as "outstanding." Doc. 32-2 at 6. Plaintiff admits her video had "an annoying yellowish tint" and that Rutherford "had a good videotape." Doc. 40 at 9.

Nevertheless, Plaintiff argues preparing and uploading a video presentation are not skills germane to serving as general counsel. Doc. 40 at 9. However, Plaintiff recognized presentation skills were relevant to the position. She testified she submitted a PowerPoint presentation instead of a traditional resume because: (1) the job posting indicated one of the general counsel's duties would be to "create, present, and monitor the completion of training seminars on various topics"; (2) she "visualized that this job was going to have to be -- someone was going to have to do a lot of presentations"; and (3) she "wanted to show the college that [she] could do presentations." Doc. 32-1 at 95-97.

Thus, Defendant's assessment that Rutherford's video presentation was stronger than Plaintiff's provides a legitimate, nondiscriminatory reason for its

hiring decision.  Plaintiff has not identified evidence showing this reason was false and a pretext for age discrimination.[12]

### iii.   Correlation between Ranking and Graduation Date

Plaintiff also infers Defendant engaged in age discrimination because of a purported correlation between the candidates' ages and where they were ranked by the committee.  Specifically, Plaintiff suggests candidates who graduated from law school more recently were ranked higher than candidates who graduated earlier. However, Plaintiff's own table, Doc. 40 at 24, shows inconsistencies in the alleged correlation.  For example, the fifth and sixth-ranked candidates graduated in 1992 and 1997 yet were ranked ahead of the seventh and eighth-ranked candidates, who graduated in 1999 and 1998.[13]

Furthermore, correlation is not causation, and absent evidence showing all candidates possessed similar qualifications and submitted similar application materials, no inference of discrimination can be drawn.  *See Brown v. Am. Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir. 1991) (noting statistical evidence may be used to demonstrate "both a prima facie case of discrimination and pretext" but

---

[12] Even assuming Plaintiff had rebutted the video presentation reason, her failure to rebut the qualifications and employment history reasons would still warrant summary judgment in Defendant's favor.  *See Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.") (citation omitted).

[13] In addition, Rutherford, who graduated from law school in 2017, was ranked second in the composite rankings to Kutch, who graduated in 2012.

statistics "without an analytic foundation[] are virtually meaningless"); *see also Taylor v. Farm Credit of N. Fla. ACA*, 2022 WL 4493044, at *6 (11th Cir. Sept. 28, 2022) (without evidence to provide necessary context, such as the racial composition of the applicants, statistical data showing 98% of defendant's real-estate borrowers were white did not permit a reasonable inference of discrimination).  Moreover, as Defendant correctly notes, Doc. 39 at 3, Plaintiff used graduation dates as a proxy for age, but a candidate's graduation date is not necessarily indicative of their age.

### iv.    Deviation from Policy

Plaintiff also suggests Defendant's failure to follow its own hiring policies is evidence of pretext.  Specifically, Plaintiff contends: (1) Defendant's "Employment Process" handbook requires the HR department to screen applications but it failed to do so; (2) the handbook requires screening committees to "have a diverse membership in both gender, racial or ethnic makeup," Doc. 32-2 at 11, but the general counsel screening committee was only diverse with respect to gender, Doc. 40 at 16; and (3) the handbook did not state Stephenson could serve as chair of the screening committee and also make the hiring decision, Doc. 40 at 17.

As an initial matter, Plaintiff has neither cited evidence establishing the screening committee was not racially or ethnically diverse nor identified any specific portion of the Employment Process handbook which prohibited Stephenson from serving on the committee and making the hiring decision.  Regardless, while "an

employer's deviation from its own standard procedures may serve as evidence of pretext," *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006), "a plaintiff must show that the deviation from policy occurred in a discriminatory manner," *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002). Here, Plaintiff has not shown how Rutherford benefitted from HR's failure to screen applications, from a racially or ethnically homogenous committee, or from Stephenson's presence on the committee; indeed, both Plaintiff and Rutherford were subjected to the same hiring process and their application materials were scrutinized by the same individuals. *Cf. Brown*, 939 F.2d at 952 ("It is difficult to hold that a practice which affects applicants of all races in the same manner is actually designed to conceal a racially discriminatory motive.") (citation omitted). Thus, Plaintiff has failed to demonstrate how Defendant's alleged deviation from its policies is evidence of pretext.

### v.    Shifting Explanation

Plaintiff suggests Defendant's rationale for not hiring her has changed. *See Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 F. App'x 886, 889 (11th Cir. 2013) ("Pretext may also be established by proof of inconsistent statements or shifting explanations for the adverse employment decision, suggesting that the articulated reasons are recently fabricated or false."). She claims the position statement Defendant submitted to the Florida Commission on Human Relations in

October 2021 focused on her not being a member of the Florida Bar but now Defendant is claiming its decision was based on her video presentation. This argument is meritless. Defendant's position statement, Doc. 31-3 at 33, and motion for summary judgment, Doc. 34 at 18, offer—verbatim—the same nondiscriminatory reasons for the hiring decision: "DeVore was not qualified for the job of general counsel, and other candidates ranked higher, provided more thorough applications and were better overall candidates." While the 6-page position statement did not explicitly reference Defendant's negative view of Plaintiff's video presentation, such a view is certainly encompassed with the statement that other candidates "provided more thorough applications and were better overall." Furthermore, the position statement contained the disclaimer that it was "not intended to be an exhaustive presentation of the evidence that may be available to the College at this time" and that it did "not necessarily raise all legal theories and/or available defenses." Doc. 31-3 at 29. Thus, Plaintiff has not demonstrated Defendant's explanation for its decision has changed, much less that it has changed in a way that is indicative of discrimination.

### E.    Convincing Mosaic

As an alternative to using the *McDonnell Douglas* framework, a plaintiff may survive summary judgment by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the

decisionmaker." *Adams*, 824 F. App'x at 985 (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).  A "convincing mosaic" may exist where evidence shows, among other things: (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systematically better treatment of similarly situated employees; and (3) that the employer's justification is pretextual.  *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019).

Plaintiff asserts she has presented a convincing mosaic of circumstantial evidence which is sufficient to infer age discrimination and survive summary judgment.  Doc. 40 at 37.  Putting aside the arguments and evidence regarding pretext previously addressed in section III.D, *supra*, Plaintiff points to the following evidence which she contends shows she was discriminated against.

First, during Kutch's virtual interview, he was asked why he was interested in working on the Emerald Coast for Defendant.  Kutch Interview, 14:07:43.  Kutch responded by indicating that he and his wife wanted to move closer to their parents (who lived in Jacksonville) but, based on what they had heard from friends, they did not want to live in the same city as their parents.  *Id.*, 14:07:59.  This joke elicited laughter from Stephenson and the other interviewers.  *Id.*, 14:08:25.  Kutch then went on to explain that he and his wife were confident in their ability to hire quality childcare rather than relying on "grandma."  *Id.*, 14:08:38.  Although Plaintiff

believes this benign interaction demonstrates Stephenson was biased against older people or grandparents, Docs. 31 at 11; 40 at 38, the undersigned disagrees.  It shows nothing other than the interviewers laughing about the light-hearted manner in which Kutch described the dynamic he wished to maintain with his parents.  Thus, it does not support an inference that age discrimination plagued the hiring process.

Second, Plaintiff states "not even one screening committee member has offered a declaration" to support Defendant's motion for summary judgment, Doc. 40 at 38, which she apparently believes is suspicious.  However, this statement is false; Stephenson was a member of the screening committee—and responsible for the ultimate hiring decision—and submitted a declaration in support of the motion. That declaration outlined the unrebutted, nondiscriminatory reasons for hiring Rutherford over Plaintiff.

Third, Plaintiff finds it suspicious that Rutherford was allowed to submit a supplemental reference, while Plaintiff was not allowed to provide additional information after the application deadline such as an update regarding her admission to the Florida Bar.  Doc. 40 at 38.  Plaintiff, however, has not presented evidence showing when Rutherford submitted the supplemental reference and, thus, it is unclear whether the reference was submitted after the top-ranked candidates were selected for virtual interviews or whether it was submitted at the request of Defendant.  Regardless, there is no evidence showing the supplemental reference

was ever contacted or that Stephenson considered the supplemental reference when he made the hiring decision.  The evidence regarding the supplemental reference does not create an inference of age discrimination sufficient to defeat Defendant's motion for summary judgment.

Fourth, Plaintiff notes Defendant admitted it decided not to hire her based on factors other than the minimum qualification requirements, which would have included her Florida Bar admission status.  Doc. 40 at 38-39.  However, this admission does not suggest Defendant engaged in age discrimination.  Indeed, it is consistent with Defendant's explanation that it chose Rutherford over Plaintiff because it felt Rutherford was the better candidate based on the application materials that were submitted.

Fifth, Plaintiff notes Defendant objected to answering an interrogatory she issued which asked how many administrative employees it had who were over the age of 65 on October 1, 2020.  Doc. 40 at 39.  Based on the objection, Plaintiff speculates Defendant has "very few, if any, [employees] who are older than 65." *Id.* However, no such inference can be drawn from Defendant's objection.  Even if Defendant employed very few administrative employees over the age of 65, such data would be meaningless without additional context (e.g., the total number of administrative employees, whether qualified individuals over the age of 65 had applied for or voluntarily left such jobs).  Furthermore, this interrogatory was the

topic of Plaintiff's motion to compel, Doc. 22, which the Court denied as premature, and thus, moot.  Doc. 25.[14]

Sixth, Plaintiff faults Rutherford for not being able to recall certain events during her deposition.  Plaintiff, however, fails to explain how Rutherford's inability to recall the details of events which occurred almost three years before her deposition is somehow evidence that Stephenson engaged in age discrimination when he hired Rutherford over Plaintiff.

Based on the foregoing, Plaintiff has not established a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by Defendant.

## IV.   Conclusion

The mere fact an employer decided to hire a younger candidate rather than an older candidate does not allow a reasonable jury to conclude that decision was discriminatory.  Plaintiff has not shown the reasons Defendant articulated for hiring Rutherford were pretextual and she has not shown her age was the reason she was not hired.  *See Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009) ("[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act.") (citation

---

[14] In denying the motion to compel, the Court directed the parties to meet and confer regarding the interrogatory, finding, while relevant, it was vague and ambiguous.  Doc. 25.

omitted).  Her age discrimination claim rests on nothing more than speculation.  *See Ray v. City of Tallahassee*, 664 F. App'x 816, 819 (11th Cir. 2016) ("Conclusory allegations of discrimination are, without more, insufficient to carry the plaintiffs burden.") (citation omitted).

Accordingly, it is RECOMMENDED:

1.     That Defendant's motion for summary judgment, Doc. 33, be GRANTED, as Plaintiff has not rebutted Defendant's legitimate, nondiscriminatory reasons for its hiring decision.

2.     That Plaintiff's motion for partial summary judgment, Doc. 31, be terminated as MOOT.

3.     That judgment be entered in favor of Defendant and against Plaintiff.

At Pensacola, Florida, this 17th day of November, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.